STATE OF VERMONT
SUPERIOR COURT - ENVIRONMENTAL DIVISION

Brisson et al. v. Town of Monkton　　　{　　　Docket No. 24-2-13 Vtec

**Decision on the Merits**

This declaratory judgment action arises from an application filed by Brisson Stone, LLC, Allan Brisson, and Michael Brisson (Applicants) for a "gravel extraction operation" in the Town of Monkton, Vermont (the Town). Applicants submitted the application in January 2012 and the Zoning Administrator denied it in February 2012. Applicants appealed that denial to the Town of Monkton Development Review Board (the DRB). After numerous public hearings and deliberative sessions between March 27, 2012 and January 22, 2013, the DRB ultimately denied the application by vote on January 22 and issued its written denial on February 26, 2013. Applicants have appealed the February 26 denial to this Court. That matter is entitled In re Brisson Gravel Extraction Application and has been assigned Docket No. 34-3-13 Vtec. The related matter, Docket No. 34-3-13 Vtec, has been on inactive status pending the outcome of this declaratory judgment action. The Court has been handling the two related matters in a coordinated fashion pursuant to V.R.E.C.P. 2(d). This decision is only in the declaratory judgment matter.

In this matter, Applicants filed a motion for summary judgment asking this Court to find Applicants' project approved as a matter of law under a legal doctrine commonly referred to as "deemed approval." Applicants argued that they are entitled to the remedy of deemed approval under 24 V.S.A. § 4464(b)(1) because the DRB failed to issue an opinion within 45 days of the close of the evidence on its application. The Town argued that material facts were in dispute as to when the final public hearing on the application was held and therefore when the deemed approval clock started running. In a December 23, 2013 decision we denied Applicants' motion for summary judgment.

Applicants then filed a motion asking us to reconsider our December 23 decision denying their motion for summary judgment. Despite Applicants' repeated assertions in

1

this motion that the facts were undisputed, we continued to conclude, as we held in our December 23 decision, that there was a dispute of material fact. Moreover, we concluded that the facts in the record, viewed in the light most favorable to the Town, did not establish that Applicants were entitled to judgment as a matter of law. We found no error in our prior decision, and therefore, denied Applicants' Motion for Reconsideration of Denial of Summary Judgment. An evidentiary hearing was held at the Addison Superior Courthouse in Middlebury, Vermont on January 17, 2014.

Applicants were represented at this hearing by attorneys David J. Shlansky and Colin R. Hagan, and are additionally represented by Matthew E. Rohrbaugh, who was not present at trial. The Town is represented by attorneys Liam L. Murphy and Damien J. Leonard. Finally, interested person Claudia Orlandi is represented by attorney James A. Dumont, however, attorney James W. Runcie appeared and represented Ms. Orlandi during the trial.

Based upon the evidence presented at trial, the Court renders the following Findings of Fact and Conclusions of Law.

### Findings of Fact

1.   Applicants applied for a permit for a gravel extraction operation with the Town of Monkton Zoning Administrator (ZA) on January 11, 2012.

2.   Applicants' property is located in the R-5 Rural Agricultural zoning district.

3.   Gravel extraction is a permitted use in any zoning district in the Town. A public hearing and the approval of a rehabilitation plan are required.

4.   The ZA denied the application on February 9, 2012.

5.   Appellants appealed this denial to the DRB on February 22, 2012.

6.   The DRB analyzed as a preliminary issue whether the application should be denied because Applicants' proposed use was not a gravel extraction operation but was instead a quarrying operation.

7.   The DRB held the first full public hearing on April 24, 2012. This hearing was continued to May 22, 2012, and the DRB requested certain information from Applicants. The DRB specifically asked Applicants and other interested parties to

2

be prepared to discuss the difference between a gravel extraction operation and a quarrying operation.

8. At the conclusion of the May 22 hearing, the hearing was continued to July 24, 2012.

9. No testimony was taken at the July 24 hearing. Rather, the hearing was opened and the matter was continued to August 28, 2012.

10. At the August 28 hearing, the DRB took evidence and testimony, including the testimony of experts presented by Applicants and other witnesses. The August 28 hearing was continued to October 23, 2012.

11. In a September 16, 2012 letter, the DRB advised the parties of procedures to follow in preparing for the October 23 hearing and indicated its hope and intent that it would be able to decide the discrete issue of whether the proposal was a permitted gravel extraction operation following the October 23 hearing.

12. Another public hearing was held on October 23, 2012. The DRB took further evidence, including expert testimony. Near the end of the hearing DRB Chair Peter Close suggested the hearing on the application be adjourned and a decision rendered within 45 days. After further discussion the DRB elected not to adjourn the hearing but instead to continue it to a date certain. At the end of the hearing the DRB unanimously voted to continue the public hearing on the application to November 27, 2012.

13. On November 13, 2012, the DRB discussed the application in a private deliberative session that was not a pubic hearing on the application.

14. Due to public and personal commitments, the DRB notified the parties that it would be unable to reach a decision before the November 27 hearing and that it would therefore officially open the hearing at its scheduled time and then continue it to a date certain. No one opposed this action by the DRB. The DRB did in fact open the hearing on November 27 and continue it to January 22, 2013.

15. On December 18, 2012, Mr. Close, the DRB Chair, sent an e-mail message to Applicants' permitting consultant Pedro Zevallos and others explaining that at the

3

November 27 hearing the DRB continued its consideration of the application and would again consider the application during its hearing set for January 22, 2013.

16. On December 20, 2012 and again on January 8, 2013, the DRB entered executive session to deliberate on the application. These deliberative sessions were not public hearings.

17. On January 22, 2013, the DRB held the scheduled public hearing where the application was discussed. The DRB admitted into evidence a number of documents from Applicants and others submitted to the DRB following the October 23 hearing and in advance of the January 22, 2013 hearing. These documents include, but were not limited to, the following:

   a. A November 26, 2012 letter from Applicants' permitting consultant Pedro Zevallos to the DRB. In this letter, Mr. Zevallos requests that an attached second November 26, 2012 letter from Mr. Zevallos to attorneys Murphy and Leonard be shared with the DRB members. Mr. Zevallos also asks that Applicants have the opportunity to testify or provide evidence and cross-examination in response to every submission to the DRB.

   b. A November 27, 2012 letter from Mr. Zevallos to Stephen Pilcher requesting that Mr. Pilcher provide a clarifying written statement to the DRB regarding Mr. Pilcher's prior testimony before the DRB. Mr. Zevallos requests that the clarifying letter be subject to evidentiary examination and inquiry at a future hearing.

   c. Additional letters of December 4, 5, and 6, 2012 between these same individuals.

   d. A January 7, 2013 letter from Mr. Zevallos to the DRB again regarding Mr. Pilcher's testimony before the DRB.

   e. A December 4, 2012 letter from Mr. Zevallos to attorney Murphy regarding *ex parte* communication.

4

f.  A December 6, 2012 letter from Mr. Zevallos to attorney Murphy regarding attorney Murphy's March 30, 2012 opinion letter to the DRB. In this letter, Mr. Zevallos requests that the hearing be reopened.

18. During the January 22, 2013 hearing, Applicants, through their attorney, were allowed to speak on a number of procedural issues including whether the DRB had engaged in *ex parte* communications, whether a March 30, 2012 letter from the Town's counsel should be part of the record, whether the DRB could rely on that letter, and whether the application was deemed approved in the interim between the November 27, 2012 and January 22, 2013 hearings. Other parties were also given an opportunity to speak on the application.

19. At the conclusion of the January 22, 2013 hearing, the DRB adjourned the hearing and voted to deny the application. The DRB issued its written denial on February 26, 2013.

20. Applicants timely appealed that decision and filed this separate declaratory judgment action for deemed approval of the application.

## Conclusions of Law

The only issue Applicants raise in their complaint is whether they are entitled to have their conditional use application deemed approved pursuant to 24 V.S.A. § 4464(b)(1). Applicants assert that the evidence establishes that the DRB closed the evidentiary portion of the hearing on the application at the close of the October 23, 2012 hearing. Applicants further argue that because the DRB failed to issue a decision within 45 days of the October 23 hearing, the application was approved by operation of law on the 46th day following that hearing. The Town disagrees and states that the evidence was not closed until the final public hearing on January 22, 2013. Because the decision was made within 45 days of the January 22 meeting, the Town argues that the application cannot be "deemed approved." The Town further argues that the DRB was only considering a preliminary issue, whether the project was a permitted gravel extraction operation, and not the merits of the application. For this reason, the Town argues that the

5

application was still open, as a positive finding on the preliminary issue would have required additional public hearings.

**I.       Deemed Approval**

The deemed approval remedy for an application before an appropriate municipal panel is established by 24 V.S.A. § 4464(b)(1), which states in relevant part:

> The appropriate municipal panel may recess the proceedings on any application pending submission of additional information. The panel should close the evidence promptly after all parties have submitted the requested information. The panel shall adjourn the hearing and issue a decision within 45 days after the adjournment of the hearing, and failure of the panel to issue a decision within this period shall be deemed approval and shall be effective on the 46th day.

In interpreting and applying this statutory provision we are required to apply the plain meaning of the statutory language in order to give effect to the legislature's intent. State v. O'Neill, 165 Vt. 270, 275 (1996).

The Vermont Supreme Court has noted that "[t]he purpose of the deemed-approval remedy is 'to curtail indecision and protracted deliberations in the zoning decision-making process . . . .'" In re Bjerke Zoning Permit Denial, 2014 VT 13, ¶ 11 (quoting In re Trahan NOV, 2008 VT 90, ¶ 12, 184 Vt. 262). In determining whether deemed approval is appropriate "[w]e must balance this purpose against the paramount obligation to protect the safety and general welfare of the public." In re Newton Enters., 167 Vt. 459, 465 (1998).

The plain language of § 4464(b)(1) indicates that the legislature intended the adjournment of a hearing following the closing of evidence to have a binding effect on the DRB. Specifically, the statute states that the "panel should close the evidence promptly after all parties have submitted the requested information" and "[t]he panel shall adjourn the hearing and issue a decision within 45 days after the adjournment of the hearing." 24 V.S.A. § 4464(b)(1). In applying the previous deemed approval statute (the now repealed 24 V.S.A. § 4407(2)), our Supreme Court also concluded that the adjournment of the public hearing triggers the deemed approval period, rather than "'deliberative sessions' accompanied by nonbinding representations about the status of the evidence." In re

6

McEwing Servs., LLC, 2004 VT 53, ¶ 16, 177 Vt. 38 (finding that numerous unnoticed meetings closed to the public, without continuing the public hearing, and acceptance of some evidentiary items offered by Applicant, were insufficient to toll the deemed approval period).

In McEwing, the DRB, despite making nonbinding statements that the evidence on the application before them remained open, did not hold any additional public hearings. The nonbinding assertions were accompanied by deliberative sessions only. "Deliberations" are defined by statute as "weighing, examining and discussing the reasons for and against an act or decision, but expressly excludes the taking of evidence and the arguments of parties." 1 V.S.A. § 310(1) (emphasis added). In contrast, "a public hearing occurs for purposes of [deemed approval] if: (1) the hearing is open to the public, (2) the applicant receives notice of the hearing, (3) the board offers an opportunity for interested persons to be heard on the issues before it." In re Fish, 150 Vt. 462, 465 (1988). The Supreme Court held in McEwing that the DRB's deliberative sessions and statements that the evidence remained open were insufficient to toll the deemed approval period. McEwing Servs., 2004 VT 53, ¶ 12, ¶ 16.

Applicants argue that they are entitled to the deemed approval remedy because the DRB failed to issue a decision within 45 days of the October 23, 2012 hearing. They argue that the plain language of the statute only allows the DRB to recess the hearing "pending the submission of additional information." Applicants contend that the DRB did not intend to take additional information after the October 23, 2012 hearing, that it did not take additional information after this hearing, and that the statutory period therefore began running after this hearing.

Based upon the credible testimony of two DRB members, Chair Peter Close and member Thea Gaudette, we conclude that the DRB hearing(s) in this matter were adjourned at the close of the January 22, 2013 hearing. Therefore, the DRB's February 26, 2013 written decision was timely issued within 45 days of the January 22 hearing.

The DRB heard the subject application over several months, with the first hearing being held on April 24, 2012. In preparation for its October 23 hearing, the DRB sent a

7

letter on September 16, 2012 from DRB Chair Close to Applicants and Interested Parties. This letter states that the DRB "wishes to conclude the taking of evidence on the discrete issue of whether a crushed rock quarrying operation may be permitted" at the October 23 hearing. The DRB also stated that it "intend[ed] to enter a deliberative session to determine whether a crushed rock quarrying operation may be permitted under the Regulations." Thus, it is clear that the DRB was attempting to conclude the taking of evidence at its October 23, 2012 hearing, however, that did not happen.

Alan Brisson and Mr. Zevallos credibly testified that they were under the impression that the October 23 hearing was the final hearing on the discrete issue of whether the application was for a permitted use. Alan Brisson testified that he clearly heard Chair Close say at the October 23 hearing that the hearings were closed and that a decision would be issued on or before November 27, 2012. While we find that such statements were made by Chair Close, the totality of the evidence before us shows that the full DRB changed direction and did not close the hearings, but instead unanimously voted to continue the October 23 hearing to November 27, 2012. These events were explained at considerable length by town attorney Murphy near the end of the October 23 DRB hearing and by Chair Close and DRB member Gaudette during the merits hearing before this Court.

Our conclusion that the evidence was not closed at the October 23, 2012 hearing is further supported by the fact that several documents, received by the DRB between October 23, 2012 and January 22, 2013, were admitted into evidence during the January 22 hearing. Applicants assert that these documents addressed only procedural issues. We find that any distinction between procedure and substance, even if accurate, is irrelevant as the documents were admitted into evidence by the DRB. Furthermore, Applicants were given advance notice that the January 22 hearing was a continuation of earlier hearings both from the DRB's action at the October 23 and November 27, 2012 hearings and from Chair Close's December 18 e-mail to Mr. Zevallos and others.

During trial, DRB members were examined at length regarding the meaning and use of the terms "closed," "adjourned," "continued," and "deliberations." While these

8

terms can have significant meaning in analyzing a municipal panel's actions and the triggering of the deemed approval period, we consider the totality of the evidence and are careful to place greater weight on the substance of the municipal panel's actions over the form or language the panel uses in conducting its hearings.

In the present case, not only did the DRB continue the public hearing to dates certain, but the DRB also did more than make "nonbinding representations about the status of the evidence." The evidence remained open because the public hearings provided "an opportunity for interested persons to be heard on the issues before [the DRB]." McEwing Servs., 2004 VT 53, ¶ 13 (citing Fish, 150 Vt. at 465). Because the DRB continued the hearings to dates certain and all three Fish requirements for a public hearing were met at the January 22, 2013 hearing, we conclude that the deemed approval clock did not begin to run until the adjournment of the January 22, 2013 hearing. The fact that the Applicants thought that the evidence was closed does not alter the fact that the DRB held valid public hearings on the application. The DRB issued its written decision on February 26, 2013. We therefore conclude that the DRB issued its decision within 45 days of the close of evidence and adjournment of its hearing. Thus, Applicants are not entitled to have their conditional use application deemed approved pursuant to 24 V.S.A. § 4464(b)(1).

### Conclusion

For all the reasons discussed above, we conclude that DRB did not close its hearing on October 23, 2012, but instead unanimously voted to continue the October 23 hearing to November 27, 2012, which was again continued to January 22, 2013. We also conclude that the DRB closed the evidence and adjourned its hearing on January 22, 2013. The DRB then timely issued its written decision on February 26, 2013. Thus, Applicants are not entitled to have their conditional use application deemed approved pursuant to 24 V.S.A. § 4464(b)(1).

Applicants' petition for declaratory judgment is **DENIED.** A Judgment Order accompanies this Decision. This completes the current proceedings before this Court.

<u>In re Brisson Gravel Extraction Application</u> , Docket No. 34-3-13 Vtec, the appeal of the DRB's February 26, 2013 decision, has been on inactive status pending the outcome of this declaratory judgment action. Appellants have not yet filed their Statement of Questions. Accordingly, Appellants have 20 days from the date of this decision to file and serve their Statement of Questions.

Done at Berlin, Vermont this 30th day of January, 2014.

_____
Thomas G. Walsh, Environmental Judge